**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MAGNA5 MS LLC,<br>Plaintiff,<br>-against-<br>ADAM SPINNER,<br>Defendant. | CIVIL ACTION<br>No. 1:26-cv-00992-MN |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated: September 28, 2026

**BLANK ROME LLP**

*/s/ Anna E. Currier*
Anna E. Currier (#6271)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
(302) 425-6400
Anna.Currier@blankrome.com

Leigh Ann Buziak (*pro hac vice*)
Christopher Cody Wilcoxson (*pro hac vice*)
One Logan Square
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5500
Leighann.Buziak@blankrome.com
Cody.Wilcoxson@blankrome.com
*Counsel for Plaintiff Magna 5 MS LLC*

**TABLE OF CONTENTS**

**Page**


INTRODUCTION ....................1

NATURE AND STAGE OF PROCEEDINGS ....................3

SUMMARY OF ARGUMENT ....................4

STATEMENT OF FACTS ....................5

A. Spinner's Position of Trust. ....................5

B. The Scheme Begins During Spinner's Employment. ....................5

C. Cybrhaven's Fictitious CEO. ....................5

D. Hidden Administrative Accounts. ....................6

E. Spinner's Active Concealment. ....................6

F. Encouragement of Evidence Destruction. ....................6

G. The Insider Scheme. ....................7

LEGAL STANDARD ....................8

ARGUMENT ....................8

A. Pennsylvania Law Governs the Tort Claims ....................8

(i) Place of the wrongful conduct. ....................8

(ii) Place of harm. ....................9

(iii) Center of the relationship. ....................9

B. The Fiduciary Duty Claim Survives Because Spinner's Fraud and Deception Are Analytically Separate from His Contract Breach. ....................9

1. Under *Synthes v. Emerge Medical*, Fraud Used to Maintain Access to an Employer's Systems Is Not a Contract Claim ....................10

2. Spinner Invoiced Magna5 for Consulting While Diverting the Customers He Was Paid to Retain ....................11

3. Spinner Owed Fiduciary Duties Independent of the Contracts ....................12

C. The Tortious Interference Claim Targets the Fraudulent Means Spinner Used to Divert Customers, Not the Mere Fact of Competition ....................13

1. The Complaint Pleads Independently Wrongful Conduct ....................13

(i) Existing relationships. ....................13

(ii) Purposeful, harmful action. ....................14

(iii) No privilege or justification. ....................14

(iv) Actual damage. ....................14

(v) The Economic Loss Doctrine Does Not Shield Those Who Compete Through Fraud ....................14

D. The Unfair Competition Claim Reaches Spinner's Fraud, Deception, and System Infiltration—Conduct Beyond Any Contract ....................15

E. Spinner's Remaining Arguments Are Without Merit ....................17

(i) Overlapping Damages Do Not Establish Duplicative Claims ....................17

CONCLUSION ....................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8

*Automated Precision Inc. v. Pare*,
631 F. Supp. 3d 185 (D. Del. 2022)....................4, 14

*Blue Chip Capital Fund II Ltd. Partnership v. Tubergen*,
906 A.2d 827 (Del. Ch. 2006)....................13

*Centennial Lending Grp., LLC v. Seckel Cap., LLC*,
2017 WL 4861625 (Pa. Super. Ct. Oct. 26, 2017)....................15

*Cornell Glasgow, LLC v. La Grange Props.*,
2012 WL 2106945 (Del. Super. Ct. June 6, 2012) ....................9, 11, 15

*CrewFacilities.com, LLC v. HotelEngine, Inc.*,
2021 WL 2649758 (D. Del. June 28, 2021)....................4, 15

*EDIX Media Grp., Inc. v. Mahani,*
2006 WL 3742595 (Del. Ch. Dec. 12, 2006)....................13

*Gale v. Bershad,*
1998 WL 118022 (Del. Ch Mar. 4, 1998)....................13

*GWO Litigation Trust v. Sprint Solutions, Inc.*,
2018 WL 5309477 (Del. Super. Ct. Oct. 25, 2018)....................16

*McKenzie v. BDO USA, P.C.*,
2026 WL 191010 (Del. Ch. Jan. 26, 2026)....................12

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ....................12

*Pelagatti v. Cohen*,
536 A.2d 1337 (Pa. Super. Ct. 1987)....................13

*Reading Radio, Inc. v. Fink*,
833 A.2d 199 (Pa. Super. Ct. 2003)....................16

*Synthes (USA) v. Globus Med., Inc.*,
No. 04-CV-1235, 2005 WL 2233441 (E.D. Pa. Sept. 14, 2005) ....................15

*Synthes, Inc. v. Emerge Medical, Inc.*,
25 F. Supp. 3d 617 (E.D. Pa. 2014) .......... *passim*

*Thompson Coal Co. v. Pike Coal Co.*,
412 A.2d 466 (Pa. 1979) .......... 13

**Other Authorities**

Fed. R. Civ. P. 8 .......... 8, 16, 17

Fed. R. Civ. P. 12 .......... 4, 8

Restatement (Second) of Conflict of Laws § 145 .......... 8

## INTRODUCTION

Defendant Adam Spinner's ("Spinner") Motion to Dismiss ("Motion") asks this Court to dismiss three tort claims—breach of fiduciary duty (Count X), tortious interference (Count XI), and unfair competition (Count XII)—as duplicative of Magna5's contract claims. The allegations of the Complaint, which must be accepted as true, tell a different story of Spinner's conduct, which demonstrate that his actions are independently actionable in tort for the following reasons.

First, as to the breach of fiduciary duty claim, in November 2025, while he was employed with Magna5 as an Executive Director, Spinner told Magna5's CEO he was leaving to run his sister's mental health practice. He proposed a transition plan: Magna5 would promote his husband, Tamur Saleem, and Spinner would stay as a paid consultant to help retain customers. Compl. ¶¶ 36–37. Magna5 agreed. It promoted Saleem. It paid Spinner consulting fees. It relied on his assurances that he was protecting the customer base. Compl. ¶¶ 37–38. Every word of it was a fabricated cover story to maintain access to confidential information and customer and employee relationships to convert them to Spinner's own competing business. By then, Spinner had already registered two competing domains—Helpra on August 17, 2025, and Cybrhaven on September 29, 2025—and incorporated Cybr1978 LLC on October 15, 2025. Compl. ¶ 39. While Magna5 promoted Saleem and paid Spinner consulting fees, Spinner was planning to divert Magna5's customers to his own competing businesses while maintaining access to the information that would allow him to do so. Compl. ¶¶ 43–45.

Second, as to the tortious interference and unfair competition claims, when Spinner became a consultant to Magna5 and when customers started leaving, Spinner continued his deception and told Magna5 he was disappointed and upset. Compl. ¶¶ 47–48. Spinner *affirmatively concealed* that he, Saleem, and seven other Magna5 employees converted these customers for their own

benefit. *Id.* Spinner did not merely breach his restrictive covenants. He carried out a calculated and methodical scheme of fraud and deception that independently gives rise to tort liability:

- Spinner created a fictitious identity—"Joshua Bernstein," a purported Cybrhaven CEO—to execute unauthorized vendor transfer documents, concealing his involvement in the competing business. Compl. ¶¶ 46, 61.
- Spinner created hidden "IT Engineer" email accounts with global administrative access inside at least five customer systems, enabling Cybrhaven to service Magna5's customers without detection. Compl. ¶¶ 54–58.
- Spinner invented a cover story—claiming he was working for his sister's mental health practice—to explain his departure while concealing his true competitive activities. Compl. ¶¶ 36–38.
- Spinner affirmatively lied to Magna5's CEO about the cause of customer departures, expressing feigned concern while he was the architect of the very departures he lamented. Compl. ¶¶ 47–48.
- co-conspirator Jason Dobbs renamed a OneNote file from "Jason @ Cybrhaven" to "Jason @ M5" and then deleted it, evidencing coordinated evidence destruction. Compl. ¶ 64(c).
- Spinner disabled customer access to systems and blocked customer communications with Magna5 to create the false impression that Magna5 had abandoned its clients, coercing customers to remain with Cybrhaven. Compl. ¶ 128(g).

- Spinner recruited seven Magna5 employees into his scheme while all remained on Magna5's payroll—not merely soliciting them away, but enlisting them as active participants in a fraud against their own employer. Compl. ¶¶ 63–64.
- Spinner submitted consulting invoices to Magna5 and collected consulting fees during the very period he was actively undermining Magna5 and diverting its customers to Cybrhaven. Compl. ¶¶ 37–38, 43–48.

The tort claims are not duplicative of the contract claims. They rest on conduct that is independently tortious: fraud, deception, and concealment that give rise to causes of action wholly apart from any contract. Under *Synthes, Inc. v. Emerge Medical, Inc.*, 25 F. Supp. 3d 617, 724–26 (E.D. Pa. 2014), where a defendant makes misrepresentations to maintain access to proprietary information, those facts are "analytically separate from the breach of the contract claim itself." *Id.* at 726. In *Synthes*, a former employee secretly formed a competing company and submitted fraudulent expense reports, which was conduct "analytically separate" from his contract breach. The same is true here, where Spinner engaged in conduct that is "analytically separate" from the breach of contract claims including: fabrication of a fictitious CEO, planting hidden administrative accounts inside customer systems, destroying evidence, and submitting fraudulent consulting invoices while diverting the very customers he was paid to retain.

**<u>NATURE AND STAGE OF PROCEEDINGS</u>**

Magna5 filed this action on August 6, 2026, asserting twelve counts against Adam Spinner arising from Spinner's alleged breach of restrictive covenants contained in an Asset Purchase Agreement, an Employment Agreement, and an Independent Contractor Consulting Agreement, and related tort claims. (D.I. 1.) On August 6, 2026, Magna5 filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. (D.I. 3.) On September 8, 2026, Spinner

filed his Opposition to the TRO Motion (D.I. 21) and concurrently filed a Partial Motion to Dismiss Counts X (breach of fiduciary duty), XI (tortious interference with business relations), and XII (unfair competition) under Federal Rule of Civil Procedure 12(b)(6). (D.I. 25–26.)

## SUMMARY OF ARGUMENT

1. Count X (Breach of Fiduciary Duty) is not duplicative of the contract claims because it rests on duties arising from Spinner's position as Executive Director, a fiduciary role. The Complaint alleges that Spinner secretly built a competing business while still employed, using his position to access Magna5's proprietary systems and customer data, fabricating a cover story to conceal his disloyalty. Under *Synthes, Inc. v. Emerge Medical, Inc.*, 25 F. Supp. 3d 617 (E.D. Pa. 2014), fraud used to maintain access to an employer's systems is "analytically separate" from a contract breach. The same is true here.

2. Count XI (Tortious Interference) targets the fraudulent means Spinner used to divert Magna5's customers. The Complaint alleges that Spinner created fictitious identities, planted hidden administrator accounts in Magna5's customer systems, directed an insider to execute unauthorized vendor transfers, and destroyed evidence. These independently wrongful acts are not governed by any contractual provision. *Automated Precision Inc. v. Pare*, 631 F. Supp. 3d 185 (D. Del. 2022), is inapposite because there, the only alleged wrong was breach of a noncompete; here, the Complaint alleges a constellation of independently tortious conduct.

3. Count XII (Unfair Competition) addresses Spinner's fraud, deception, and system infiltration. Under Pennsylvania law, unfair competition encompasses misrepresentation, improper inducement of employees, and unlawful use of confidential information. The Complaint alleges all three. *CrewFacilities.com* and *GWO Litigation Trust* are distinguishable because they involved conduct coextensive with the parties' contracts; Spinner's conduct was not and is independently actionable.

## STATEMENT OF FACTS

The following facts, drawn from the Complaint, must be accepted as true on this Motion.

### A. Spinner's Position of Trust.

In April 2021, Magna5 purchased Spinner's managed IT services business for millions of dollars. Compl. ¶ 5. As part of the deal, Magna5 hired Spinner as Executive Director of its New York Metro Region, giving him full access to Magna5's confidential business information, customer relationships, employee relationships, and internal systems. Compl. ¶¶ 6–7. Three separate agreements—an Asset Purchase Agreement ("APA"), an Employment Agreement, and an Independent Contractor Consulting Agreement ("ICCA")—each contained restrictive covenants prohibiting competition and solicitation. Compl. ¶¶ 16–35.

### B. The Scheme Begins During Spinner's Employment.

In November 2025, Spinner told Magna5's CEO he was leaving to run his sister's mental health practice, "Mind, Body, and Soul." He proposed that Magna5 promote his partner, Tamur Saleem, and that Spinner remain as a paid consultant to help retain customers. Compl. ¶¶ 36–37. That was a cover story. By the time Spinner made these representations, he had already registered two competing business domains—Helpra on August 17, 2025, and Cybrhaven on September 29, 2025—and had incorporated Cybr1978 LLC on October 15, 2025. Compl. ¶ 39. Magna5 promoted Saleem as Spinner requested and paid Spinner consulting fees. Compl. ¶¶ 37–38. In return, Spinner assured Magna5 he was working to retain customers but was secretly diverting them to Cybrhaven. When customers left, he expressed feigned distress, claiming they had found cheaper alternatives. In reality, Spinner, Saleem, and other Magna5 employees *were* the alternative. Compl. ¶¶ 47–48.

### C. Cybrhaven's Fictitious CEO.

Spinner used the fictitious identity "Joshua Bernstein"—a purported CEO of Cybrhaven—to countersign Kaseya/Datto vendor transfer documents that moved Magna5's customer backup

devices and disaster recovery services to Cybrhaven. Compl. ¶¶ 46, 61. Upon information and belief, "Joshua Bernstein" is a fictitious person created by Spinner to conceal his involvement. Compl. ¶ 46.

**D. <u>Hidden Administrative Accounts.</u>**

Starting in April 2026, Spinner created fake "IT Engineer" email accounts with global administrative access inside at least five customer systems. Compl. ¶ 54. These generic accounts (e.g., "itengineer@[customerdomain].com") provided unrestricted access to the customer's entire IT environment without detection. *Id.* Spinner and other Magna5 employees used these accounts to service customers through Cybrhaven, concealing the competing activity from Magna5. Compl. ¶¶ 55–57.

**E. <u>Spinner's Active Concealment.</u>**

Spinner actively concealed his competing activities. When a customer inadvertently copied his Cybrhaven email address on a Magna5 email chain—twice, in December 2025 and January 2026—Spinner immediately replied from his Magna5 account and removed the Cybrhaven address. Compl. ¶¶ 41–42. Throughout the spring of 2026, as customers began canceling, Spinner repeatedly told Magna5 he had nothing to do with the departures and was working hard on Magna5's behalf. Compl. ¶¶ 47–48. Those assurances were false. *Id.*

**F. <u>Encouragement of Evidence Destruction.</u>**

Spinner recruited at least seven Magna5 employees into his scheme. Compl. ¶¶ 63–64. One of them, Jason Dobbs, renamed a OneNote file from "Jason @ Cybrhaven" to "Jason @ M5" and then deleted it—evidencing awareness that his activities on behalf of Cybrhaven would violate his obligations to Magna5. Compl. ¶ 64(c).

### G. The Insider Scheme.

Saleem—the insider Spinner had installed at Magna5—executed unauthorized transfers of Magna5's customer backup devices and employee-monitoring services to Cybrhaven, using Magna5's own vendor accounts and relationships. Compl. ¶¶ 43–45.

Spinner, while still a Magna5 consultant, used a Magna5 laptop and Magna5 email to set up a virtual CTO schedule with Magna5 customer Customer NYE, copying a Cybrhaven email address. Compl. ¶ 53. And, Spinner introduced Cybrhaven to Magna5 customers on a recorded call, with Magna5 employees present, using Magna5's own internal systems to market the competitor. Compl. ¶¶ 50–52.

As a result of this scheme, Magna5 has lost at least ten customers worth millions of dollars in annual revenue, with approximately 65 additional customers at risk. Compl. ¶¶ 69, 71–72.

The following chart maps each category of Spinner's alleged conduct to the independent tort it supports:

| Independently Wrongful Conduct | Independent Cause of Action |
|---|---|
| (a) Creating fictitious identity ("Joshua Bernstein") to execute vendor transfer documents and conceal involvement in competing business (Compl. ¶¶ 46, 61) | Fraud; Unfair Competition |
| (b) Creating hidden "IT Engineer" admin accounts with global administrative access in at least five customer systems (Compl. ¶¶ 54–58) | Fraud; Tortious Interference; Unfair Competition |
| (c) Fabricating cover story (claiming to work for sister's mental health practice) to conceal competitive activity (Compl. ¶¶ 36–38) | Fraud; Breach of Fiduciary Duty |
| (d) Affirmatively lying to Magna5's CEO about cause of customer departures, expressing feigned concern while orchestrating those departures (Compl. ¶¶ 47–48) | Fraud; Breach of Fiduciary Duty |
| (e) Evidence destruction: co-conspirator Dobbs renaming OneNote from "Jason @ Cybrhaven" to "Jason @ M5" and deleting it (Compl. ¶ 64(c)) | Fraud; Civil Conspiracy |
| (f) Disabling customer access to systems and blocking customer communications with Magna5 to create false impression Magna5 had abandoned them (Compl. ¶ 128(g)) | Tortious Interference; Unfair Competition |

| | |
|---|---|
| (g) Recruiting 7 Magna5 employees into active fraud scheme while all remained on Magna5's payroll—not soliciting them away, but enlisting them as participants in a fraud against their own employer (Compl. ¶¶ 63–64) | Unfair Competition; Civil Conspiracy |
| (h) Submitting consulting invoices to Magna5 and collecting consulting fees while actively diverting Magna5's customers to Cybrhaven (Compl. ¶¶ 37–38, 43–48) | Fraud; Breach of Fiduciary Duty |

The contracts prohibit competition and solicitation. Spinner's conduct goes far beyond that. Each category above independently gives rise to tort liability regardless of any contract between the parties.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. The complaint survives if it states enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(d) permits alternative and even inconsistent pleading. Fed. R. Civ. P. 8(d)(2)–(3). A plaintiff may plead contract and tort claims arising from the same events. The question is whether the tort claims rest on duties independent of the contractual obligations.

## ARGUMENT

### A. Pennsylvania Law Governs the Tort Claims

Spinner applies Delaware law to all three tort claims. But, this Court applies the forum state's choice-of-law rules. Under Delaware's "most significant relationship" test, Restatement (Second) of Conflict of Laws § 145, Pennsylvania law governs. The relevant factors all point to Pennsylvania:

(i) Place of the wrongful conduct.

Spinner's tortious interference and unfair competition were directed at Magna5's customers, employees, and business operations all centered in Pennsylvania where Magna5 is

headquartered. The harm was not incidental to Pennsylvania: it was targeted at a Pennsylvania company's Pennsylvania-based operations.

(ii) Place of harm.

The impact of the financial harm from Spinner's tortious conduct—lost customers, lost revenue, diverted employees—was in Pennsylvania, where Magna5's principal place of business is located and where its business operations are managed. Compl. ¶ 11.

(iii) Center of the relationship.

The parties' business relationship was centered in Pennsylvania: Magna5 is a Pennsylvania company that acquired Spinner's business and employed him to manage a region from its Pennsylvania-based headquarters. *See* TRO Br. at 9.

Accordingly, Pennsylvania law applies to the tort claims.

Even if Delaware law applies, the result is the same because Delaware and Pennsylvania law are similar. Delaware's anti-bootstrapping doctrine bars only claims that "inton[e] the *prima facie* elements of the tort while telling the story of the defendant's failure to perform under the contract." *Cornell Glasgow, LLC v. La Grange Props.*, C.A. No. N11C-05-016 JRS, 2012 WL 2106945, at *8 (Del. Super. Ct. June 6, 2012). The Complaint tells no such story. Under either state's law, the tort claims survive.

**B. <u>The Fiduciary Duty Claim Survives Because Spinner's Fraud and Deception Are Analytically Separate from His Contract Breach</u>**

Count X does not allege that Spinner breached a fiduciary duty by competing or soliciting—the contracts address that. It alleges that Spinner breached duties of loyalty and good faith arising from his position of trust as Executive Director and consultant. Compl. ¶¶ 117–118. Those duties arise from the fiduciary relationship, not from the contracts, and is independently actionable in tort.

1. Under *Synthes v. Emerge Medical*, Fraud Used to Maintain Access to an Employer's Systems Is Not a Contract Claim

*Synthes, Inc. v. Emerge Medical, Inc.*, 25 F. Supp. 3d 617, 724–26 (E.D. Pa. 2014) addresses the exact same facts that are before the Court in this case. There, a Synthes regional manager secretly formed a competing company while still employed. He and his co-founders operated in "stealth" mode. He submitted fraudulent expense reports for meetings with the competitor's investors. When Synthes asserted fraud claims, the defendants argued they were barred by the gist-of-action doctrine—Pennsylvania's equivalent of Delaware's anti-bootstrapping doctrine. *Id.* at 724. The court disagreed. Because Synthes alleged that the defendants "made misrepresentations which resulted in [the employee's] continued employment and access to proprietary information, such facts, if proven, are analytically separate from the breach of the contract claim itself." *Id.* at 725 (quoting *Orthovita v.* Erbe, No. Civ.A. 07-2395, 2008 WL 423446 (E.D. Pa. Feb. 14, 2008)). The court held that operating in "stealth" mode to avoid detection was fraud that "falls outside the bounds of the contractual agreements." *Id.* at 725–26.

The governing principle that applies here is that "courts have not invoked the doctrine to bar tort suits when the defendant not only breached the contract, but also made representations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant." *Id.* at 726 (internal quotations omitted) (citing *Orthovita*, 2008 WL 423446.). That is what happened here. This case is *Synthes* with worse facts:

- **Stealth Mode:** Like Marotta, Spinner operated in stealth to avoid detection. But Spinner went further—he created a fictitious identity ("Joshua Bernstein") and hidden administrative accounts, neither of which was alleged in Synthes. Compl. ¶¶ 41–42, 46, 54–58.
- **Fraudulent Expense Submissions:** Like Marotta, who submitted fraudulent expense reports for Emerge-related meetings, Spinner submitted consulting invoices to Magna5 and collected consulting fees during the very period he was

actively diverting Magna5's customers. Compl. ¶¶ 37–38, 43–48. The Synthes court held that "the mere fact that Marotta submitted expenses to Synthes for non-Synthes work—regardless of whether such expenses were incurred in forming Emerge or competing with Synthes—is sufficient to allege fraud." 25 F. Supp. 3d at 726.

- **Misrepresentations to Maintain Access:** Like Marotta, Spinner misrepresented his loyalty to maintain his position and access. But Spinner affirmatively lied about the cause of customer departures and expressed feigned distress to Magna5's CEO—conduct that goes well beyond Marotta's passive concealment. Compl. ¶¶ 47–48.

- **Evidence Destruction:** Like the defendant in *Orthovita* who deleted 5,500 files, Spinner's co-conspirator Dobbs renamed and deleted evidence of the scheme. Compl. ¶ 64(c).

- **Use of Employer Resources:** Like Marotta, Spinner used his employer's resources for the competing venture. But Spinner went much further—he used Magna5's own employees, laptops, email accounts, vendor relationships, and internal systems. Compl. ¶¶ 44–45, 50–53.

Under *Synthes*, the fiduciary duty claim survives. Likewise, under Delaware law, the anti-bootstrapping doctrine bars "intoning the *prima facie* elements of the tort while telling the story of the defendant's failure to perform under the contract." *Cornell Glasgow*, 2012 WL 2106945, at *8. The Complaint here provides a panoply of additional facts showing Spinner's scheme demonstrating otherwise tortious conduct beyond Spinner's failure to perform his contractual obligations.

2. <u>Spinner Invoiced Magna5 for Consulting While Diverting the Customers He Was Paid to Retain</u>

The consulting arrangement the Spinner orchestrated illustrates the *Synthes* principle at its starkest: Spinner "made representations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship." *Synthes*, 25 F. Supp. 3d at 724. Spinner proposed a deal: if Magna5 promoted Saleem, Spinner would stay on to help retain customers. Compl. ¶¶ 36–37. Magna5 promoted Saleem and paid Spinner consulting fees. Compl. ¶¶ 37–38. The consulting arrangement was a mechanism to maintain Spinner's access to

Magna5's systems and customers while he diverted those customers to Cybrhaven. He used it to identify vulnerable accounts, maintain relationships with key contacts, and reassure Magna5 that departures were organic. Compl. ¶¶ 43–48.

This is the *Synthes* pattern. In *Synthes*, the defendant submitted fraudulent expense reports; here, Spinner submitted fraudulent consulting invoices. In *Synthes*, the defendant concealed his competing activities to keep his job; here, Spinner concealed his to keep *both* his consulting income and his access to Magna5's systems. The duty not to invoice an employer for services rendered in bad faith arises from the fiduciary relationship and the common-law prohibition against fraud—not from the contract.

3. <u>Spinner Owed Fiduciary Duties Independent of the Contracts</u>

The cases that Spinner cites are inapposite:

- *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) stands for the proposition that fiduciary claims are superfluous where the obligations are "expressly addressed by contract." Opening Br. at 2–3. But *Nemec* limits that rule to "that specific context" where the dispute arises from contractual obligations. *Nemec*, 991 A.2d at 1129. That is not this case.
- In *McKenzie v. BDO USA, P.C.*, 2026 WL 191010, at *7 (Del. Ch. Jan. 26, 2026), a former partner and board member sued the company, alleging fiduciary breach because his former partners stripped him of his variable share partner ("VSP") shares, conduct that was expressly governed by the partnership agreement. *McKenzie* involved no fraud, no fictitious identities, no hidden system infiltration, no evidence destruction, and no affirmative misrepresentations to management. Here, the fiduciary claim rests on conduct that independently constitutes a breach of fiduciary duty apart from any contractual obligation.

- Likewise, both *Blue Chip Capital Fund II Ltd. Partnership v. Tubergen*, 906 A.2d 827 (Del. Ch. 2006) and *Gale v. Bershad*, 1998 WL 118022 (Del. Ch. Mar. 4, 1998) involved claims of breach of contractual and fiduciary duties owed by directors to preferred stockholders. In those cases, the duties and obligations were tied to redeeming stock at an unfair price in violation of the certificate of incorporation. The duties in those cases all flowed from the contract, unlike here, where there are independently actionable facts as set forth above beyond those duties set forth in the contract.

## C. The Tortious Interference Claim Targets the Fraudulent Means Spinner Used to Divert Customers, Not the Mere Fact of Competition

### 1. The Complaint Pleads Independently Wrongful Conduct

Spinner applies the wrong law. His brief applies Delaware's anti-bootstrapping and economic-loss doctrines, but the tort claims are governed by Pennsylvania law. *See supra* Section A. Under Pennsylvania law, a claim for intentional interference with contractual or prospective contractual relations requires: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation or prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damage resulting from the defendant's conduct." *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979)).

The Complaint satisfies each element:

(i) Existing relationships.

Magna5 had contractual and prospective relationships with its customers—including Customer A, Customer JG, Customer BF, Customer I, and Customer NYE—and vendor relationships with Kaseya/Datto and Teramind. Compl. ¶ 122.

(ii) Purposeful, harmful action.

Spinner did not merely compete. He (a) solicited Magna5's customers to terminate their relationships; (b) facilitated unauthorized transfers of vendor relationships and equipment from Magna5 to Cybrhaven; (c) used Magna5's own employees and internal systems to service customers on behalf of his competing entities; (d) concealed his competitive activities from Magna5 while continuing to collect consulting fees; and (e) disabled customer access to systems under his control to deceive customers into believing Magna5 had abandoned them. Compl. ¶ 124.

(iii) No privilege or justification.

Spinner had no privilege to compete by fraud. He concealed his activities, used a fictitious identity, planted hidden admin accounts, lied to Magna5's management, and used Magna5's own resources and employees to effectuate the scheme. There is no competitive privilege for stealing. See TRO Br. at 20.

(iv) Actual damage.

Magna5 has lost at least ten customers worth millions of dollars in annual revenue, with approximately 65 additional customers at risk. Compl. ¶ 125.

*Synthes* applies here too. Spinner interfered with Magna5's customer relationships through independently tortious means—fictitious identities, hidden admin accounts, lies to management, evidence destruction. The tortious interference claim targets the *means*, not the mere fact of competition.

(v) The Economic Loss Doctrine Does Not Shield Those Who Compete Through Fraud

Even under Delaware law, Spinner's argument fails. Spinner relies on *Automated Precision, Inc. v. Pare*, 631 F. Supp. 3d 185, 201–02 (D. Del. 2022), for the proposition that a tortious interference claim fails where the only alleged wrong is breach of a contractual agreement.

But *Automated Precision* is distinguishable on its facts: it involved a claim where "the only alleged 'wrong' was breach of the defendant's contract with the plaintiff." *Id.* at 201. Here, the Complaint alleges a constellation of wrongs that exist entirely independent of any contract: fraud, fictitious identities, hidden administrative accounts, evidence destruction, and affirmative misrepresentations to management.

The anti-bootstrapping doctrine prevents repackaging a contract breach as a tort. It does not immunize fraud simply because the fraudster also breached a contract.

### D. <u>The Unfair Competition Claim Reaches Spinner's Fraud, Deception, and System Infiltration—Conduct Beyond Any Contract</u>

Spinner argues the unfair competition claim "rises and falls with its contract counts." Opening Br. at 5. Again, he applies the wrong law. And again, he ignores the conduct alleged in the Complaint.

"Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes (USA) v. Globus Med., Inc.*, No. 04-CV-1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005). The test is whether the defendant's competitive conduct was "fair." Conduct is unfair when it involves fraud, deception, or misappropriation.

In *Centennial Lending Grp., LLC v. Seckel Cap., LLC*, 2017 WL 4861625, at *9–10 (Pa. Super. Ct. Oct. 26, 2017), the Pennsylvania Superior Court confirmed that Pennsylvania unfair competition claims survive where the defendant's conduct goes beyond mere competition to "systematically inducing employees to leave their present employment" with the purpose of "crippl[ing] and destroy[ing] an integral part of a competitive business organization," particularly

"when the inducement is made for the purpose of having the employees commit wrongs, such as disclosing their former employer's trade secrets *or enticing away his customers*, the injured employer is entitled to protection." *Id.* (emphasis added) (quoting *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. Ct. 2003)). Spinner systematically recruited seven Magna5 employees—across the entire organizational hierarchy of Magna5's NY Region—to facilitate the diversion of customers and disclosure of confidential information. Compl. ¶¶ 63–66.

The Complaint identifies eight categories of independently wrongful competitive conduct, each mapped in the chart above. This is not a case of "telling the story of the defendant's failure to perform under the contract." *Cornell Glasgow*, 2012 WL 2106945, at *8. It is the story of a coordinated deception and fraud. Count XII also alleges that Spinner's conduct "constitutes unfair competition because it involves the misappropriation of Magna5's trade secrets and confidential information, deceptive and fraudulent conduct, and breach of a duty of trust and confidence." Compl. ¶ 129. This is the kind of egregious, deceptive competitive conduct that Pennsylvania's unfair competition doctrine was designed to reach—and it is not duplicative of any contract claim.

Spinner cites *CrewFacilities.com, LLC v. HotelEngine, Inc.*, 2021 WL 2649758, at *4 (D. Del. June 28, 2021) and *GWO Litigation Trust v. Sprint Solutions, Inc.*, 2018 WL 5309477 (Del. Super. Ct. Oct. 25, 2018). But both are distinguishable. They are Delaware cases (Pennsylvania law governs here), and they involved unfair competition that consisted entirely of conduct the contracts already addressed—misuse of confidential information (both *CrewFacilities* and *GWO Litigation Trust*) and solicitation (*CrewFacilities*). Here, the claim rests on fabricating an identity, planting hidden administrative accounts, submitting fraudulent invoices, and manipulating customer systems to create the illusion that Magna5 had abandoned its customers. All of this conduct is independently actionable, and does not depend on or duplicate the contractual claims.

*EDIX Media Grp., Inc. v. Mahani*, 2006 WL 3742595, *11 (Del. Ch. Dec. 12, 2006) is entirely inapplicable. There, the "complaint provide[d] no detail as to precisely what actions constitute unfair competition", which is completely the opposite of the case here, where the Complaint contains substantial detail regarding all of Spinner's unfair and deceitful conduct.

**E. Spinner's Remaining Arguments Are Without Merit**

(i) Overlapping Damages Do Not Establish Duplicative Claims

Spinner argues that overlapping damages make the tort claims duplicative. Opening Br. at 4. Not so.

First, Rule 8(d) expressly permits alternative pleading with overlapping damages. Fed. R. Civ. P. 8(d)(2)–(3). A plaintiff is entitled to plead alternative theories of liability for the same harm and need not elect among them at the pleading stage. That Magna5 may seek compensatory damages under both contract and tort theories is not a basis for dismissal—it is the ordinary operation of the Federal Rules.

Second, the availability of *punitive damages* on the tort claims—which are categorically unavailable for breach of contract—independently demonstrates that the claims are not duplicative. Punitive damages are available on the fiduciary duty, tortious interference, and unfair competition claims precisely *because* those claims rest on independently wrongful conduct—fraud, deception, and willful misconduct—for which punitive damages exist as a remedy. The fact that the contract claims cannot support punitive damages confirms that the tort claims address different wrongs with different remedies.

Third, the test for duplicativeness is not whether the damages overlap, but whether the underlying *duties* are different. Here, the contract claims enforce specific non-competition, non-solicitation, and confidentiality obligations. The tort claims are premised on conduct—fraud, deception, identity fabrication, system infiltration, and evidence destruction—that independently

constitutes torts under the common law. Those causes of action arise from fundamentally different duties, even if the resulting financial harm overlaps.

## CONCLUSION

Spinner's motion assumes the tort claims allege nothing more than breach of the parties' contracts. The Complaint alleges fraud, fictitious identities, hidden administrative accounts, evidence destruction, and systemic deception. Under *Synthes*, that conduct is "analytically separate from the breach of the contract claim itself." 25 F. Supp. 3d at 725.

The tort claims rest on independently wrongful conduct, are governed by Pennsylvania law, and are expressly permitted under Rule 8(d). Because punitive damages are available only on the tort claims, dismissing them would deprive Magna5 of the remedy this conduct warrants.

The motion to dismiss Counts X, XI, and XII should be denied.

Respectfully submitted,

**BLANK ROME LLP**

Dated: September 28, 2026

By: /s/ Anna E. Currier
Anna E. Currier (#6271)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
(302) 425-6400
Anna.Currier@blankrome.com

Leigh Ann Buziak (*pro hac vice*)
Christopher Cody Wilcoxson (*pro hac vice*)
One Logan Square
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5500
Leighann.Buziak@blankrome.com
Cody.Wilcoxson@blankrome.com

*Counsel for Plaintiff Magna 5 MS LLC*