**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MAGNA5 MS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:26-cv-00992-MN |
| | ) | |
| ADAM SPINNER, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT ADAM SPINNER'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION TO DISMISS DUPLICATIVE TORT CLAIMS UNDER FED. R. CIV. P. 12(b)(6)

OF COUNSEL:
**ABRAMS FENSTERMAN, LLP**
Justin T. Kelton, Esquire (*admitted pro hac vice*)
Jill Braunstein, Esquire (*admitted pro hac vice*)
1 MetroTech Center, Suite 11201
Brooklyn, NY 11201
jkelton@abramslaw.com
jbraunstein@abramslaw.com
Phone: 718.215.5300

**WHITE AND WILLIAMS LLP**

Timothy S. Martin (DE Bar No. 4578)
600 N. King Street, Suite 800
Wilmington, Delaware 19801
Martint@whiteandwilliams.com
Phone: 302.654.0424

Attorneys for Defendant, Adam Spinner

DATED: October 12, 2026

**<u>TABLE OF CONTENTS</u>**


TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I. MAGNA5'S CHOICE-OF-LAW ARGUMENT DOES NOT ALTER THE ANALYSIS 2

II. COUNT X'S BREACH OF FIDUCIARY DUTY CLAIM IS DUPLICATIVE OF THE CONTRACT CLAIMS ........................................................................................ 3

A. *Synthes* Does Not Save the Fiduciary Duty Claim ................................................... 3

B. *Nemec* Controls ........................................................................................................ 4

III. COUNT XI FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS FAILS UNDER *AUTOMATED PRECISION* ........................................................... 6

IV. MAGNA5'S UNFAIR COMPETITION CLAIM IN COUNT XII IS DUPLICATIVE OF THE CONTRACT CLAIMS ............................................................................... 7

V. RULE 8(d) AND MAGNA5'S DEMAND FOR PUNITIVE DAMAGES DO NOT SAVE THE TORT CLAIMS .................................................................................... 9

**TABLE OF AUTHORITIES**

**Cases**

*Automated Precision, Inc. v. Pare*, 631 F. Supp. 3d 185 (D. Del. 2022) .................................. 6, 7

*Blue Chip Cap. Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827 (Del. Ch. 2006) .......................... 5

*Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014)................................................................. 3

*Casapulla v. BNY Admin. Servs. LLC*, 2026 WL 2935272 (D. Del. Sept. 30, 2026) ..................... 3

*Centennial Lending Grp., LLC v. Seckel Cap., LLC*, 2017 WL 4861625 (Pa. Super. Ct. Oct. 26, 2017)............................................................................................................... 7

*CIM Urban Lending GP, LLC v. Cantor Commer. Real Estate Sponsor, L.P.*, 2016 WL 768904 (Del. Ch. Feb. 26, 2016)......................................................................................... 5

*Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945 (Del. Super. June 6, 2012) ............................................................................................................. 10

*CrewFacilities.com, LLC v. HotelEngine, Inc.* 2021 WL 2649758 (D.Del. June 28, 2021).......... 8

*Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156 (Del. 2010).............................................................. 2

*E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436 (Del. 1996) ..................................... 9

*Edinburgh Holdings, Inc. v. Education Affiliates, Inc.*, 2018 WL 2727542 (Del. Ch. June 6, 2018)............................................................................................................... 5

*EDIX Media Grp, Inc. v. Mahami*, 2006 WL 3742595 (Del. Ch. Dec. 12, 2006)......................... 8

*Gale v. Bershad*, 1998 WL 118022 (Del. Ch. Mar. 4, 1998)........................................................ 5

*Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463 (3d Cir. 2024)..... 3

*Grunstein v. Silva*, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009) ................................................... 6

*GWO Litigation Trust v. Sprint Solutions, Inc.*, 2018 WL 5309477 (Del. Super. Ct. Oct. 25, 2018)............................................................................................................... 8

*IOTEX Commc'ns, Inc. v. Defries*, 1998 WL 914265 (Del. Ch. Dec. 21, 1998) .......................... 10

*Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872 (Del. Ch. 2009)............................................ 5, 9

*McKenzie v. BDO USA, P.C.*, 2026 WL 191010 (Del. Ch. Jan. 26, 2026) ................................... 5

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010)................................................................ 4, 5, 6, 9

*Owens v. Connections Cmty. Support Programs, Inc.*, 840 F. Supp. 2d 791 (D. Del. 2012)......... 9

*Pelagatti v. Cohen*, 536 A.2d 1337 (Pa. Super. Ct. 1987) ............................................................ 6

*Reading Radio, Inc. v. Fink*, 833 A.2d 199 (Pa. Super. Ct. 2003)................................................. 7

*Richey v. Showtime Networks, Inc.*, 2026 WL 867264 (D. Del. Mar. 30, 2026)........................... 2

*Synthes (USA) v. Globus Med., Inc.*, 2005 WL 2233441 (E.D. Pa. Sept. 14, 2005) ...................... 7

*Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617 (E.D. Pa. 2014) ...................................... 3

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................ 1

Defendant Adam Spinner, by and through his undersigned counsel, respectfully submits this Reply Brief in further support of his Motion to Dismiss Duplicative Tort Claims under Fed. R. Civ. P. 12(b)(6) (D.I. 25).

## INTRODUCTION

Magna5's Opposition confirms what Spinner's Opening Brief demonstrated: Counts X, XI, and XII attempt to recast alleged breaches of contract as tort claims. Magna5 seeks to recover, in tort, for the same alleged competition, customer and employee solicitation, and use of confidential information that form the basis of its breach-of-contract claims in Counts I through IX. Indeed, Magna5 concedes that "[t]he contracts prohibit competition and solicitation." (D.I. 64 ("Opp.") at p. 8.) Unable to identify conduct independent of those contractual obligations, Magna5 simply relabels the manner in which Spinner allegedly competed and solicited customers, and allegedly concealed doing so, as "fraud." Delaware law does not permit such bootstrapping.

The Complaint alleges that Spinner used a purported "cover story," a "fictitious CEO," administrative accounts, and misrepresentations regarding customer departures. But on Magna5's own telling, those allegations describe the means by which the alleged contractual breaches were carried out or concealed. They do not constitute an independent fraud, nor did they cause any injury separate and distinct from the injuries Magna5 seeks to recover under its contract claims, namely lost customers, lost revenue, and diminished business value. Indeed, the Complaint itself states that "Magna5 brings this action to enforce Spinner's contractual obligations…" (Compl. ¶ 3.) A plaintiff cannot evade Delaware's anti-bootstrapping doctrine merely by characterizing an alleged breach of contract in more pejorative terms.

Magna5's remaining arguments are equally unavailing. Its reliance on Pennsylvania law is academic because Magna5 concedes that Delaware and Pennsylvania law are "similar" and

produce “the same” result. (Opp. at p. 9.) Likewise, Magna5’s acknowledgment that dismissal of the tort claims “would deprive Magna5 of the remedy” of punitive damages (Opp. at p. 18) underscores the true purpose of Counts X, XI, and XII: to obtain through tort theories a remedy unavailable for ordinary breach-of-contract claims. Because the alleged tort claims arise from the same conduct, seek recovery for the same injuries, and depend upon the same alleged contractual breaches as Counts I through IX, Counts X, XI, and XII should be dismissed.

## ARGUMENT

### I. MAGNA5'S CHOICE-OF-LAW ARGUMENT DOES NOT ALTER THE ANALYSIS

Magna5 argues that Pennsylvania law governs its tort claims. (Opp. at p. 8-9.) The Court need not resolve that issue. Under Delaware's choice-of-law rules, which govern here, the threshold inquiry is whether an actual conflict exists between the potentially applicable bodies of law. If no conflict exists, the Court need not undertake a choice-of-law analysis. *See Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010). Magna5 concedes there is no such conflict, acknowledging that "[e]ven if Delaware law applies, the result is the same because Delaware and Pennsylvania law are similar." (Opp. at p. 9.) That concession is dispositive. Having admitted that Delaware and Pennsylvania law produce the same result, Magna5 identifies no reason for the Court to engage in a choice-of-law analysis. *See Richey v. Showtime Networks, Inc.*, 2026 WL 867264 at *6-7 (D. Del. Mar. 30, 2026) (declining to conduct a choice-of-law analysis where no true conflict existed because the outcome was the same under either state's law), citing *Deuley*, 8 A.3d at 1161. Under either State's law, the dispositive question is whether the duty allegedly breached is independent of the contracts. It is not. [1]

[1] Pennsylvania law compels the same result. Under Pennsylvania's gist-of-the-action doctrine, "the mere labeling by the plaintiff of a claim as being in tort . . . is not controlling"; if "the duty breached

## II. COUNT X'S BREACH OF FIDUCIARY DUTY CLAIM IS DUPLICATIVE OF THE CONTRACT CLAIMS

### A. *Synthes* Does Not Save the Fiduciary Duty Claim

The centerpiece of Magna5's Opposition is a chart purporting to assign various categories of alleged conduct to purportedly "independent" causes of action. (Opp. at p. 7-8.) But the causes of action most frequently identified in that chart, including "Fraud" and "Civil Conspiracy," appear nowhere in the Complaint. Magna5 asserted breach-of-contract claims in Counts I through IX and only the three tort claims challenged here in Counts X through XII. The Complaint does not plead fraud, civil conspiracy, fraudulent inducement, or any other standalone tort theory that could supply the independent duty Magna5 now seeks to invoke. It is axiomatic that a complaint cannot be amended through arguments raised in opposition to a motion to dismiss. *Casapulla v. BNY Admin. Servs. LLC*, 2026 WL 2935272 at *2 (D. Del. Sept. 30, 2026) (citing *Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 472 (3d Cir. 2024).

Magna5's reliance on *Synthes* is misplaced. According to Magna5, Synthes "addresses the exact same facts." (Opp. at p.10.) It does not. *Synthes* involved a materially different pleading and addressed whether Pennsylvania's gist-of-the-action doctrine barred a host of tort claims, including a separately pleaded fraud claim. *See Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 723-26 (E.D. Pa. 2014).

Nor does *Synthes* support Magna5's effort to recast alleged contractual breaches as fiduciary misconduct. The *Synthes* court repeatedly distinguished between conduct governed by contractual obligations and conduct arising from independent legal duties. Here, the conduct

---

is one created by the contract," the claim sounds in contract. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). Magna5 itself calls that doctrine "Pennsylvania's equivalent of Delaware's anti-bootstrapping doctrine." (Opp. at p. 10.)

Magna5 identifies as purportedly fiduciary in nature is the same conduct underlying its contract claims: alleged competition, customer solicitation, employee solicitation, and use of confidential information. Magna5 itself concedes that those subjects are expressly governed by the parties' agreements. (*See* Opp. at p. 8.) Unlike *Synthes*, there is no separately pleaded fraud claim and no independent tort duty alleged that exists apart from the contracts.

**B. *Nemec* Controls**

Magna5 attempts to distinguish *Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010), by arguing that it applies only in the "specific context" of disputes arising from contractual obligations. (Opp. at p. 12.). But that is precisely the context presented here. Magna5 alleges that Spinner was bound by three written agreements prohibiting him from competing with Magna5, soliciting its customers and employees, and using its confidential information. (*See* Compl., generally). Count X alleges that Spinner breached fiduciary duties by engaging in that same conduct. (*Compare* Compl. ¶¶ 117-120 with ¶¶ 9, 79, 85-86, 109-110, 113). Indeed, the "position of trust and confidence" on which Count X rests is one Spinner allegedly occupied as Executive Director under the Employment Agreement and "as a consultant under the ICCA", confirming that the claimed relationship is itself a creature of contract. (*See* Compl. ¶117).

Magna5's contention that Count X is not based on competition or solicitation (Opp. at p. 9) cannot be reconciled with its own allegations. Count X itself alleges that Spinner breached his fiduciary duties by "secretly establishing competing businesses," divert[ing] Magna5's customers to his competing entities" and "recruiting Magna5 employees to work for his competing entities." Compl. ¶ 119(a)-(c). The only remaining allegation, that Spinner misrepresented that he was working for his sister's practice, is alleged concealment of that same competition. *Id*. ¶119(d). Each of those alleged wrongs is expressly addressed by the parties' contracts. Where, as here, "a

dispute arises from obligations that are expressly addressed by contract," Delaware law treats the dispute as a contract claim, and "any fiduciary claims arising out of the same facts that underlie the contract obligations" are "foreclosed as superfluous." *Nemec*, 991 A.2d at 1129; *see CIM Urban Lending GP, LLC v. Cantor Commer. Real Estate Sponsor, L.P.*, 2016 WL 768904 at *8 (Del. Ch. Feb. 26, 2016) (holding that because the fiduciary duty claim duplicates the contract claim, it must give way to the contract claim).

Magna5's reliance on factual distinctions from *McKenzie*, *Blue Chip*, and *Gale* fares no better. (Opp. at p. 12-13.) The governing principle is not fact-specific. It is that a plaintiff may not repackage alleged breaches of contractual duties as fiduciary-duty claims when the contracts themselves define the parties' rights and obligations. That is why *Nemec* held that "any fiduciary claims arising out of the same facts that underlie the contract obligations" are "foreclosed as superfluous." *Nemec*, 991 A.2d at 1129.

Magna5 likewise does not meaningfully address *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888-89 (Del. Ch. 2009) or *Edinburgh Holdings, Inc. v. Education Affiliates, Inc.*, 2018 WL 2727542, at *15 (Del. Ch. June 6, 2018), both of which recognize that where parties' rights and obligations are governed by contract, fiduciary-duty and implied-covenant claims arising from the same common nucleus of operative fact are duplicative and superfluous. Those decisions reinforce *Nemec's* central holding: when the alleged wrongdoing is expressly addressed by contract, Delaware law requires the plaintiff to pursue its remedies in contract, not through repackaged fiduciary theories.

Magna5's opposition ultimately confirms the point. The alleged fiduciary breaches are not independent of the contracts; they are the alleged contractual breaches. Even the damages sought in Count X, lost customer relationships, lost revenue, diminished business value, and costs of

investigation and mitigation, mirror those sought on the contract counts. (Compare Compl. ¶ 120 with ¶¶ 82, 115) Because Count X arises from the same conduct, seeks recovery for the same injuries, and depends upon the same alleged violations of the parties' agreements, *Nemec* requires its dismissal.

## III. COUNT XI FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS FAILS UNDER *AUTOMATED PRECISION*

Again, whether Pennsylvania or Delaware law applies is immaterial because Magna5 identifies no actual conflict between the states' substantive law governing tortious interference claims. *Compare Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987), with *Grunstein v. Silva*, 2009 WL 4698541 at *61 (Del. Ch. Dec. 8, 2009).

In any event, Magna5 does not address the dispositive defect. A plaintiff "cannot recover for tortious interference with prospective business relations if the defendant's only alleged 'wrong' was breach of the defendant's contract with the plaintiff." *Automated Precision, Inc. v. Pare,* 631 F. Supp. 3d 185, 201-02 (D. Del. 2022).

Magna5 invokes a purported "constellation of wrongs" but its own description of the "purposeful action" underlying Count XI confirms that the alleged wrong is nothing more than the alleged breach of contract. According to Magna5, Spinner allegedly: (a) solicited Magna5's customers; (b) facilitated transfers of vendor relationships and equipment to Cybrhaven; (c) used Magna5 employees and systems to service customers for competing entities; (d) concealed his competitive activities; and (e) disabled customer access to systems. (*See* Opp. at p.13-14.). Items (a) through (c) are alleged breaches of the non-solicitation, non-competition, and confidentiality covenants. Item (d) is alleged concealment of those same contractual breaches. And item (e) is merely an alleged means of diverting customers. None of this conduct is independently wrongful apart from the contractual restrictions Magna5 alleges Spinner violated. Each act is "wrongful"

only because the contracts allegedly prohibited it. That is precisely the circumstance *Automated Precision* held cannot support a tortious interference claim.

Magna5's "no privilege" argument only underscores the point. Absent restrictive covenants, a former employee or consultant generally remains free to compete for customers. What allegedly strips Spinner of any competitive privilege here is not an independent legal duty, but the contractual restrictions Magna5 chose to impose. The asserted absence of privilege therefore derives entirely from the contracts themselves.

Finally, Magna5 again relies on assertions contained in its TRO briefing rather than the allegations of the Complaint. (Opp. at p. 14.) Those extra-pleading assertions cannot supply the independent wrongful conduct that *Automated Precision* requires and cannot be considered on a Rule 12(b)(6) motion. The Court's inquiry is confined to the well-pleaded allegations of the Complaint, which confirm that Count XI rises or falls with Magna5's contract theories.

## IV. MAGNA5'S UNFAIR COMPETITION CLAIM IN COUNT XII IS DUPLICATIVE OF THE CONTRACT CLAIMS

Magna5 again invokes Pennsylvania authority recognizing unfair competition claims premised on the "improper inducement of another's employees, and unlawful use of confidential information." (Opp. at p. 15) (quoting *Synthes (USA) v. Globus Med., Inc.*, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005)). But those are the precise subjects governed by the employee non-solicitation and confidentiality covenants on which Magna5 separately sues. Count XII merely repackages alleged contractual violations as unfair competition.

Indeed, Magna5's own quotation from *Centennial Lending* and *Reading Radio* underscores the point. Magna5 emphasizes that employee inducement becomes actionable when undertaken "for the purpose of having the employees commit wrongs, such as disclosing their former employer's trade secrets or enticing away his customers . . . ." (Opp. at p. 15-16.) Here, however,

the alleged "wrongs" are not independent torts. They are the same conduct Magna5 alleges violated the parties' non-solicitation, non-competition, and confidentiality agreements. The unfair competition claim therefore depends on the same contractual duties that underlie Counts I through IX.

Magna5 likewise argues that Spinner's conduct "involves the misappropriation of Magna5's trade secrets and confidential information, deceptive and fraudulent conduct, and breach of a duty of trust and confidence." (Opp. at p. 16.) None of those allegations saves Count XII. The alleged misuse of confidential information is expressly governed by the confidentiality covenants. The purported "fraudulent conduct" is the unpled fraud theory discussed above. And the alleged "breach of a duty of trust and confidence" simply repackages Count X's fiduciary-duty theory, which fails because it arises from the same facts and duties as Magna5's contract claims.

Nor does Magna5 meaningfully distinguish *CrewFacilities.com, LLC v. HotelEngine, Inc.* or *GWO Litigation Trust v. Sprint Solutions, Inc*. Magna5 concedes those courts dismissed unfair competition claims premised on the misuse of confidential information and solicitation conduct that the governing contracts already addressed. (Opp. at p. 16.) That is exactly what Magna5 alleges here. The purported unfair competition is nothing more than the alleged solicitation of customers and employees, competition, and use of confidential information that form the basis of Magna5's breach-of-contract claims.

Finally, Magna5's reliance on *EDIX* is misplaced. (Opp. at p. 17.) Whether *EDIX* involved more or less factual detail is beside the point. Adding detail about how contractual obligations were allegedly breached does not transform a contract dispute into an independent tort. Because Count XII seeks to impose tort liability for conduct that is actionable, if at all, only because the parties' agreements prohibit it, the claim is duplicative and should be dismissed.

## V. RULE 8(d) AND MAGNA5'S DEMAND FOR PUNITIVE DAMAGES DO NOT SAVE THE TORT CLAIMS

Rule 8(d) permits alternative pleading; it does not permit a plaintiff to maintain a claim that fails as a matter of substantive law. Magna5 does not dispute the existence, validity, or enforceability of the three agreements. To the contrary, it affirmatively sues on them. Where the contracts indisputably govern the conduct at issue, there is no genuine alternative theory to preserve. *See Nemec*, 991 A.2d at 1129; *Kuroda*, 971 A.2d at 889.

Magna5's punitive-damages argument is equally misplaced. Magna5 reasons that because punitive damages are unavailable for breach of contract, their availability on the tort claims "confirms that the tort claims address different wrongs." (Opp. at p. 17.) But the analysis runs in the opposite direction. A court must first determine whether an independent tort exists; only then does the question of remedies arise. Delaware law forecloses punitive damages for breach of contract, and courts routinely reject attempts to obtain them by recasting contract claims as tort claims. *See E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 445 (Del. 1996); *Owens v. Connections Cmty. Support Programs, Inc.*, 840 F. Supp. 2d 791, 799 (D. Del. 2012). Magna5's warning that dismissal "would deprive Magna5 of the remedy this conduct warrants" (Opp. at p. 18) simply confirms the purpose of the tort counts: to obtain a remedy unavailable on its contract claims.

Nor do Magna5's allegations identify any duty independent of the parties' agreements. Magna5 itself agrees that "the test for duplicativeness is . . . whether the underlying duties are different." (Opp. at p. 17.). They are not.

Magna5's allegations fall into three categories. *First*, the alleged means of the contractual breaches are expressly governed by the Asset Purchase Agreement, Employment Agreement, and ICCA. Additional detail about how a covenant was allegedly breached does not create a new duty.

*Second*, alleged concealment of the breaches are simply alleged efforts to conceal the same competition and solicitation conduct. Delaware law does not permit a plaintiff to "bootstrap" a contract claim into a tort claim merely by alleging the elements of concealment or alleging misrepresentations concerning performance. *See Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945 at *24 (Del. Super. June 6, 2012); *IOTEX Commc'ns, Inc. v. Defries*, 1998 WL 914265 at *13 (Del. Ch. Dec. 21, 1998).

*Third*, alleged conduct by others. The Complaint's only allegations connecting Spinner to the renamed and deleted OneNote file is a generalized assertion that he "encouraged" recruited employees "to work against Magna5's interests" (*id.* at ¶ 63), which is the very employee-solicitation conduct governed by the APA, Employment Agreement, and ICCA. Likewise, the alleged vendor transfers merely describes another means of diverting customers in breach of the non-solicitation agreement. (*See* Compl. ¶¶44-45, 46, 59, 61, 65(a).)

Magna5 also identifies no injury distinct from its contract claims. The alleged loss of "at least ten customers" and risk to "approximately 65 additional customers" (Opp. at p. 7, 14) is precisely the harm the restrictive covenants were intended to prevent and for which Magna5 seeks recovery under its contract counts. (Compare Compl. ¶86-87 with ¶¶ 125, 130.) Because Magna5 relies on the same conduct, the same duties, and the same injury, its tort claims are duplicative as a matter of law.

**CONCLUSION**

For the foregoing reasons and those set forth in his Opening Brief, Defendant Adam Spinner respectfully requests that the Court dismiss Counts X, XI, and XII of the Complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

(signature block on following page)

OF COUNSEL:
**ABRAMS FENSTERMAN, LLP**
Justin T. Kelton, Esquire (*admitted pro hac vice*)
Jill Braunstein, Esquire (*admitted pro hac vice*)
1 MetroTech Center, Suite 11201
Brooklyn, NY 11201
jkelton@abramslaw.com
jbraunstein@abramslaw.com
Phone: 718.215.5300

DATED: October 12, 2026

**WHITE AND WILLIAMS LLP**

/s/ Timothy S. Martin
Timothy S. Martin (DE Bar No. 4578)
600 N. King Street, Suite 800
Wilmington, Delaware 19801
Martint@whiteandwilliams.com
Phone: 302.654.0424

Attorneys for Defendant, Adam Spinner